Filed 5/10/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSIE FAULKINBURY et al., | |
| Plaintiffs and Appellants, | G041702 |
| v. | (Super. Ct. No. 05CC00107) |
| BOYD & ASSOCIATES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge. Reversed and remanded with directions.

Marlin & Saltzman, Stanley D. Saltzman, Christina A. Humphrey, Craig Pynes; Class Action Litigation Group, Renee L. Barge; Law Office of Lawrence A. Witsoe, Lawrence A. Witsoe; White & Roseman and Leslie Roseman for Plaintiffs and Appellants.

LightGabler, Jonathan Fraser Light and Angela V. Lopez for Defendant and Respondent.

\*         \*         \*

## INTRODUCTION

Plaintiffs Josie Faulkinbury and William Levene (together, Plaintiffs), on behalf of themselves and all others similarly situated, appealed from the order denying their motion for class certification. They sought to represent and certify a class of about 4,000 current and former employees of defendant Boyd & Associates, Inc. (Boyd), which provides security guard services throughout Southern California. Plaintiffs and the putative class members work or worked for Boyd as security guards. They asserted Boyd denied off-duty meal breaks and off-duty rest breaks, and failed to include certain reimbursements and an annual bonus payment in calculating the hourly rate of overtime pay. Plaintiffs proposed three subclasses, which we will refer to as the Meal Break Class, the Rest Break Class, and the Overtime Class.

We issued an opinion affirming the order denying certification of the Meal Break Class and the Rest Break Class, and reversing the order denying certification of the Overtime Class. (*Faulkinbury v. Boyd & Associates, Inc.* (2010) 185 Cal.App.4th 1363, review granted Oct. 13, 2010, S184995 (*Faulkinbury I*).) We issued our opinion before the California Supreme Court issued its opinion in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*). The California Supreme Court granted review of *Faulkinbury I*, decided *Brinker*, and then transferred this case "with directions to vacate [our] decision and to reconsider the cause in light of *Brinker*[, *supra*,] 53 Cal.4th 1004." Following transfer, the parties submitted supplemental briefs on the effect of *Brinker* on this case, and we again entertained oral argument.

As the Supreme Court directed, we have reconsidered the cause in light of *Brinker*, reexamined the record, and analyzed the issues anew. We now conclude, in light of *Brinker*, that the trial court erred by denying class certification of all three subclasses and therefore reverse and remand with directions to certify all three subclasses.

2

## FACTS AND PROCEDURAL HISTORY

### I.

### Facts

Boyd is a private security guard company providing security services throughout Southern California. Boyd's clients include gated residential communities, hospitals, commercial buildings, and retail stores.

Faulkinbury was employed by Boyd as a security guard from October 2003 to November 2004, and Levene was employed by Boyd as a security guard from January 2003 to February 2005. In declarations, Plaintiffs asserted that, when hired by Boyd, each had to sign an agreement to take on-duty meal periods and that, while employed by Boyd, neither ever took an uninterrupted, off-duty meal break. They also asserted that, while employed by Boyd, they were instructed not to leave their posts and never took any off-duty rest breaks. Levene added that he was told the on-duty meal break applied to all posts at which he worked.

In support of the motion for class certification, Plaintiffs submitted declarations from 46 potential class members. Many declarations state the employee was not given a 30-minute, uninterrupted, off-duty meal period. Some employees did not recall signing an agreement regarding on-duty meal breaks. Some acknowledged signing the agreement; others declared they "w[ere] instructed" to sign the agreement.

### II.

### Procedural History

A. *The Complaint*

Plaintiffs brought this action on behalf of themselves and about 4,000 current and former employees of Boyd, who had been employed in the position of security guard, post commander, or post supervisor, or a similar position at any time during the class period. The class period was defined as the period beginning four years preceding the filing of the original complaint and ending on the date a class is certified.

3

The third amended complaint, the operative pleading, asserted causes of action under the Labor Code and Business and Professions Code section 17200 et seq. for alleged failure to pay wages and nondiscretionary bonus wages, and failure to provide meal and rest breaks.

B. *Class Certification Motion*

Plaintiffs moved for class certification in October 2008. After the trial court denied the motion, Plaintiffs brought a second motion for class certification. They sought certification of a class of all "current and former security guards employed by Boyd at any time during a four-year statute of limitations period consisting of approximately 4,000 putative class members." Plaintiffs proposed these three subclasses:

"(1) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who were required by Boyd to take an 'on-duty' meal break and therefore were not provided mandated, uninterrupted meal periods and who worked for Boyd in California at any time between March 19, 2003 and the date class certification is granted. . . . ([Meal Break Class]).

"(2) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who worked for Boyd at any time between March 19, 2003 and the date class certification is granted . . . who were not provided with mandated rest periods. ('Rest Break Class')

"(3) All current and former Security Guards, Security Guard Supervisors, Post Commanders, Rovers and other similar hourly paid job positions, who worked for Boyd at any time from May 13, 2001 and the date class certification is granted . . . and were not paid overtime wages to reflect annual bonus payments and allowances. . . . ([Overtime Class])."

In February 2009, the trial court issued an order stating: "The Motion for Class Certification is denied. Moving party has not met its burden of establishing the requisites for class treatment. It is not clear, for the reasons stated by defendant, that the

4

proposed classes are ascertainable. Additionally, it appears that individual questions of fact predominate, as set forth by defendant. These individual issues prevail over the common issues." Plaintiffs appealed from the order denying class certification.

### THE CALIFORNIA SUPREME COURT OPINION IN *BRINKER*

In *Brinker*, the trial court certified a class of about 60,000 current and former nonexempt employees of defendant corporations that owned and operated several restaurant chains. (*Brinker*, *supra*, 53 Cal.4th at pp. 1017-1018, 1019, fn. 4) The class action complaint alleged the defendants violated state laws requiring meal and rest breaks for nonexempt hourly employees and accurate recording of employee work time. (*Id.* at pp. 1018-1019.) The class definition included several subclasses, three of which were (1) a rest period subclass comprising "all 'Class Members who worked one or more work periods in excess of three and a half (3.5) hours without receiving a paid 10 minute break during which the Class Member was relieved of all duties'" during the subclass period; (2) a meal period subclass comprising "all 'Class Members who worked one or more work periods in excess of five (5) consecutive hours, without receiving a thirty (30) minute meal period during which the Class Member was relieved of all duties'" during the subclass period; and (3) an off-the-clock subclass comprising "all 'Class Members who worked "off-the-clock" or without pay'" during the subclass period. (*Id.* at p. 1019.)

The Court of Appeal held the trial court erred in certifying each of the subclasses and granted writ relief to reverse class certification. (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) The California Supreme Court granted review "to resolve uncertainties in the handling of wage and hour class certification motions." (*Ibid*.)

In its opinion, the Supreme Court concluded the trial court properly certified a rest break subclass, remanded the question of certification of the meal break subclass for reconsideration by the trial court, and concluded the trial court erred by certifying the off-the-clock subclass. (*Brinker*, *supra*, 53 Cal.4th at p. 1017.) After reviewing general class action principles, the Supreme Court addressed the extent to

5

which a trial court must address the elements and merit of a plaintiff's claim when deciding whether to certify a class. (*Id.* at p. 1023.)

The Supreme Court confirmed a class certification motion should not be a vehicle for resolving the merits of a claim, but recognized too that "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Brinker*, *supra*, 53 Cal.4th at pp. 1023-1024.) The court concluded: "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary. [Citations.] Consequently, a trial court does not abuse its discretion if it certifies (or denies certification of) a class without deciding one or more issues affecting the nature of a given element if resolution of such issues would not affect the ultimate certification decision." (*Id.* at p. 1025.)

The Supreme Court then considered the scope of an employer's duties under relevant statutes and the Industrial Welfare Commission (IWC) wage orders to afford rest and meal periods to employees and whether, in light of those duties, the Court of Appeal erred in reversing the trial court's certification of the three subclasses. (*Brinker*, *supra*, 53 Cal.4th at pp. 1027-1028.)

As to the rest break claim and subclass, the *Brinker* court clarified that the applicable wage order requires an employer to provide an employee with a 10-minute rest break for shifts from three and one-half hours to six hours in length, a 20-minute rest break for shifts of more than six hours up to 10 hours, and a 30-minute rest break for shifts of more than 10 hours up to 14 hours. (*Brinker*, *supra*, 53 Cal.4th at p. 1029.) The defendant employers had a written rest period policy, applicable to all employees, under

6

which employees were provided only one 10-minute rest break for every four hours worked, when they should be provided a second break after six hours. (*Id.* at p. 1033.) The California Supreme Court held the trial court properly certified a rest break subclass because "[c]lasswide liability could be established through common proof if [the plaintiffs] were able to demonstrate that, for example, [the employers] under this uniform policy refused to authorize and permit a second rest break for employees working shifts longer than six, but shorter than eight, hours." (*Ibid.*) The court emphasized that "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Ibid.*)[1]

Finally, as to the rest break subclass, the Supreme Court observed that class certification did not depend on resolution of "threshold legal disputes over the scope of the employer's rest break duties." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.) The Supreme Court emphasized it addressed the merit of those substantive disputes only at the parties' request. (*Id.* at pp. 1033-1034.) In general, and absent such a request, "[i]t is far better from a fairness perspective" to decide class certification independently from the merits. (*Id.* at p. 1034.)

---

[1] In support of this statement, the *Brinker* court cited three Court of Appeal cases: *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286 (*Jaimez*); *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524 (*Ghazaryan*); and *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193 (*Bufil*). In *Jaimez*, *Ghazaryan*, and *Bufil*, the Court of Appeal held the trial court abused its discretion by denying class certification. (*Jaimez*, *supra*, at pp. 1299-1307; *Ghazaryan*, *supra*, at pp. 1534-1538; *Bufil*, *supra*, at pp. 1205-1206.) These courts reasoned that the plaintiffs were challenging a uniform employment policy that allegedly violated California law, and, therefore, this violation could be proved (or disproved) through common facts and law. (*Jaimez*, *supra*, at pp. 1299-1300; *Ghazaryan*, *supra*, at pp. 1536-1538; *Bufil*, *supra*, at p. 1206.) The courts in *Jaimez* and *Ghazaryan* also concluded that common issues predominated even if the employment policy did not affect each employee in the same way and damages would need to be proved individually. (*Jaimez*, *supra*, at pp. 1301, 1303-1305; *Ghazaryan*, *supra*, at p. 1536.)

7

As to a meal break claim and subclass, the *Brinker* court first considered the nature and scope of an employer's duty to provide a meal period. (*Brinker*, *supra*, 53 Cal.4th at p. 1034.) The court concluded that under the applicable statute and wage order, "an employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period." (*Id.* at p. 1038.) Resolving conflicting appellate decisions, the Supreme Court held: "An employer's duty with respect to meal breaks [citations] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law. [¶] On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay [citations]." (*Id.* at pp. 1040-1041.)

The Supreme Court also resolved substantive issues regarding the timing of meal breaks. The court held: "[A]n employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work." (*Brinker*, *supra*, 53 Cal.4th at p. 1049.)

Returning to the issue of class certification, the Supreme Court remanded the matter to the trial court to reconsider certification of the meal break subclass in light of the Supreme Court's clarification of the law. (*Brinker*, *supra*, 53 Cal.4th at pp. 1049-1051.) The Supreme Court explained: "Our subsequent ruling on [the plaintiffs'] meal timing theory, solicited by the parties, has changed the legal landscape;

8

whether the trial court may have soundly exercised its discretion before that ruling is no longer relevant. At a minimum, our ruling has rendered the class definition adopted by the trial court overinclusive: The definition on its face embraces individuals who now have no claim against [the employers]. In light of our substantive rulings, we consider it the prudent course to remand the question of meal subclass certification to the trial court for reconsideration in light of the clarification of the law we have provided." (*Id.* at pp. 1050-1051.)

As to the off-the-clock claim and subclass, the plaintiffs had asserted the defendant employers required employees to perform work while clocked out during meal periods and did not afford them an uninterrupted 30 minutes. (*Brinker, supra,* 53 Cal.4th at p. 1051.) The Supreme Court concluded substantial evidence did not support the trial court's conclusion that common issues predominated the off-the-clock subclass. (*Ibid.*) For the off-the-clock claim and subclass, the plaintiffs had presented no evidence of a uniform policy allegedly in conflict with the Labor Code and relevant IWC wage order. (*Brinker*, *supra*, at p. 1051.) The only formal employer policy disavowed off-the-clock work, and the plaintiffs presented no evidence of "a systematic company policy to pressure or require employees to work off-the-clock." (*Ibid*.)

The Supreme Court also based its decision on the plaintiff's failure to present evidence rebutting the presumption that an employee who has clocked out is performing no work. (*Brinker*, *supra*, 53 Cal.4th at p. 1051.) An employer's liability is contingent on proof the employer knew or should have known off-the-clock work was occurring, and "[n]othing before the trial court demonstrated how this could be shown through common proof, in the absence of evidence of a uniform policy or practice." (*Id.* at pp. 1051-1052.) "Instead, the trial court was presented with anecdotal evidence of a handful of individual instances in which employees worked off-the-clock, with or without knowledge or awareness by [the employers'] supervisors. On a record such as this, where no substantial evidence points to a uniform, companywide policy, proof of

9

off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they worked, and whether [the employers] knew or should have known of their work." (*Id*. at p. 1052.)

In a concurrence to her own opinion, Justice Werdegar sought to provide guidance on remand regarding the missed meal break issues. (*Brinker*, *supra*, 53 Cal.4th at p. 1052 (conc. opn. of Werdegar, J.).) She stated the court did not endorse the employers' argument that the question why a meal period was missed renders meal period claims "*categorically* uncertifiable." (*Ibid.*) Justice Werdegar stated that if an employer's records show no meal period for a given shift, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided, shifting the burden to the employer to show the meal period was waived. (*Id.* at p. 1053 (conc. opn. of Werdegar, J.).)

## STANDARD OF REVIEW

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

10

## I.

## Class Action Requirements

"Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)

The California Supreme Court has identified three requirements for the certification of a class: (1) "the existence of an ascertainable and sufficiently numerous class"; (2) "a well-defined community of interest"; and (3) "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) The community of interest requirement in turn has three factors: (1) common questions of law or fact predominate over individual questions; (2) the class representatives have claims or defenses typical of the class; and (3) the class representatives can adequately represent the class. (*Ibid.*)

## II.

## Community of Interest

In this case, only the first factor of the community of interest requirement— predominance of common questions—is in dispute. In *Brinker*, *supra*, 53 Cal.4th at pages 1021-1022, the California Supreme Court set forth this standard for determining whether common issues predominate: "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to

11

class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]" (Fn. omitted.)

A. *The Meal Break Class*

Following the methodology of *Brinker*, we conclude common issues of fact predominate over individual issues in determining whether Boyd was liable for not providing off-duty meal breaks for its security guard employees. As we shall explain, *Brinker* teaches that we must focus on the policy itself and address the issue whether the legality of the *policy* can be resolved on a classwide basis.

As *Brinker* instructs, we begin our analysis of the Meal Break Class by examining Plaintiffs' theory of legal liability. The third amended complaint alleged Boyd is liable under Labor Code section 226.7 for requiring all class members to take on-duty meal breaks and to sign on-duty meal period agreements without regard for the job duties or locations where the class members worked. Plaintiffs' theory of legal liability, as expressed in the third amended complaint, is that "Plaintiffs and Class Members routinely worked more than 8 hours and often more than 12 hours, yet Class Members were never offered a meal break during shifts longer than five hours or a second meal break during shifts longer than 10 hours, and did not validly waive their entitlement to said meal periods, and were not offered any mandatory 10 minute rest breaks."

The evidence established Boyd had a uniform policy of requiring all security guard employees to take paid, on-duty meal breaks and to sign an agreement by which the employee agreed that he or she "shall work an on-the-job meal period, which shall be paid for by the Employer." Boyd agreed to pay the employee "the regular rate of

12

pay" for the on-duty meal period. The agreement for on-duty meal periods stated that Boyd and the employee agreed the nature of the employee's work prevented the employee from being relieved of all duties during the employee's meal period. James Romano, Boyd's vice-president, testified at his deposition the meal period agreement constituted Boyd's policy regarding meal breaks and confirmed every employee is required to sign the agreement when hired by Boyd.

The claim made by Plaintiffs is that Boyd's *policy* is unlawful; the question as framed by *Brinker* is whether that claim is amenable to class treatment. We conclude it is. The evidence presented in connection with the motion for class certification established Boyd's on-duty meal break policy was uniformly and consistently applied to all security guard employees. As *Brinker* states, "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)

The lawfulness of Boyd's policy of requiring all security guard employees to sign the on-duty meal break agreement can be determined on a classwide basis. To determine whether that policy is lawful, it must be measured against the meal period requirements of Labor Code section 226.7 and the applicable wage orders of the IWC.

Under Labor Code section 226.7, subdivision (a), "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the [IWC]." Meal and rest break requirements are contained in orders of the IWC and are issued on an industry-by-industry basis. (*Brinker*, *supra*, 53 Cal.4th at p. 1018, fn. 1.) Plaintiffs assert, and Boyd does not dispute, that IWC wage order No. 4-2001 (Wage Order No. 4-2001), codified at California Code of Regulations, title 8, section 11040, subdivision 11(A), governs an employer's obligation for providing meal breaks to hourly security guard employees. Wage Order No. 4-2001 provides: "No employer shall employ any person for a work period of more than five (5) hours without

13

a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.  Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  (Cal. Code Regs., tit. 8, § 11040, subd. 11(A); see also *Bufil*, *supra*, 162 Cal.App.4th at pp. 1197-1198.)

As *Brinker* instructs, we do not determine at this stage whether Boyd's policy of requiring on-duty meal breaks violates the law.  Instead, the question we address is whether Boyd's legal liability under the theory advanced by Plaintiffs can be determined by facts common to all class members.  The theory advanced by Plaintiffs is that "Class Members were never offered a meal break during shifts longer than five hours or a second meal break during shifts longer than 10 hours."  Under this theory, Boyd's legal liability can determined on a class basis.

As a defense to class certification, Boyd asserted the nature of the work exception, under which "[a]n 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to."  (Cal. Code Regs., tit. 8, § 11040, subd. 11(A).)  In response, Plaintiffs argued, "[t]he nature of the work of the Plaintiffs and all Class Members is not such that the employee is prevented from being relieved of all duties."  Liability turns on the issue whether Boyd's policy requiring all security guard employees to sign blanket waivers of off-duty meal breaks is lawful.  That issue can be resolved on a classwide basis.  "The theory of liability—that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment."  (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)

Indeed, by requiring blanket off-duty meal break waivers in advance from *all* security guard employees, regardless of the working conditions at a particular station,

14

Boyd treated the off-duty meal break issue on a classwide basis. Boyd took the same position in discovery responses. In support of the motion for class certification, Plaintiffs submitted interrogatory responses in which Boyd stated: "During the four years preceding the filing of plaintiffs' Third Amended Complaint, the job duties of the positions of Post Commander, Assistant Post Commander, and Security Officer prevented employees from being relieved of all duties to take off-duty meal periods. [¶] Employees who worked in a guard booth worked alone, and employees who worked on patrol also worked alone." Boyd stated in other interrogatory responses that, after making reasonable inquiry, it did not believe any "'unpaid "off-duty" meal periods' were taken during the relevant time period" and did not believe "any employee 'missed' any 'off-duty' meal period." In response to requests for admission, Boyd denied the putative class members' job duties were not of such a nature to prevent them from taking unpaid meal periods during their work shifts and stated it did not believe any unpaid, off-duty meal periods were taken during the relevant time period.

In *Faulkinbury I*, we concluded that even if Boyd's on-duty meal break policy was unlawful, Boyd would be liable only when it actually failed to provide a required off-duty meal break. *Brinker* leads us now to conclude Boyd would be liable upon a determination that Boyd's uniform on-duty meal break policy was unlawful. In *Brinker*, the Court of Appeal, in reversing class certification, had concluded that because rest breaks could be waived, any showing on a class basis that class members missed or took shortened rest breaks would not "'necessarily establish, without further individualized proof,'" that the employers had violated the Labor Code and the relevant IWC wage order. (*Brinker*, *supra*, 53 Cal.4th at p. 1033.) The Supreme Court stated that conclusion was error. An employer is required to permit and authorize the required rest breaks, and if it adopts a uniform policy that does not do so, then "it has violated the wage order and is liable." (*Ibid.*) In other words, the employer's liability arises by adopting a uniform policy that violates the wage and hour laws. Whether or not the

15

employee was able to take the required break goes to damages, and "[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion." (*Jaimez*, *supra*, 181 Cal.App.4th at p. 1301.)

In a similar procedural status, the Court of Appeal in *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1150-1151 (*Bradley*), interpreted *Brinker* in a fashion similar to our analysis. The plaintiffs in *Bradley* had alleged the employer failed to provide legally required meal and rest breaks for the putative class members. (*Bradley*, *supra*, at p. 1135.) In opposing class certification, the employer had argued, and the Court of Appeal had agreed in its initial opinion, the issue of which employees had missed meal and rest breaks, how many breaks were missed, and whether the missed breaks resulted from the employer's uniform policy was "highly dependent" on each class member's testimony. (*Id.* at p. 1151.) On remand after *Brinker*, the Court of Appeal reconsidered, and determined its initial conclusion conflicted with *Brinker*: "Under the logic of [*Brinker*'s] holdings, when an employer has not authorized and not provided legally required meal and/or rest breaks, the employer has violated the law and the fact that an employee may have actually taken a break or was able to eat food during the workday does not show that individual issues will predominate in the litigation." (*Bradley*, *supra*, at p. 1151.)

B. *The Rest Break Class*

As we did for the Meal Break Class, we follow the methodology set forth in *Brinker* in reexamining whether common issues predominate over individual issues in the Rest Break Class. We conclude common issues predominate.

We again begin by examining Plaintiffs' theory of legal liability. Plaintiffs asserted Boyd did not have a policy regarding the provision of rest breaks to security guards and had an express policy requiring all security guards to remain at their posts at all times. In support of the motion for class certification, Plaintiffs presented evidence that Boyd had no formal rest break policy, other than the employee could take a break "if

16

there is nothing to do at that moment."  Faulkinbury declared she was told "there are no breaks for security guard employees" and she believed all security guards employed by Boyd were required to remain at their posts and were not provided with relief to take rest breaks.  Levene similarly declared he was prohibited from leaving his post to take rest breaks and frequently did not have enough time to use the bathroom.  The 46 declarations that Plaintiffs submitted from putative class members state the employee was not given or was rarely given a rest break, or could not leave the assigned post for a rest break except to use the bathroom.  Plaintiffs submitted a portion of the Boyd employee handbook identifying "unacceptable behavior" to include "[l]eaving work station without permission of supervisor or proper relief during absence."

Brinker focuses on whether the lawfulness of an employer's lack of a rest break *policy* can be determined on a classwide basis.  To determine whether that policy, or lack thereof, is lawful, it must be measured against the relevant rest break requirements.  "Wage Order No. 4-2001 states that every employer must 'authorize and permit all employees to take rest periods . . . .  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours.'  ([Cal. Code Regs., tit. 8, ]§ 11040, subd. 12(A).)"  (*Bufil*, *supra*, 162 Cal.App.4th at pp. 1198-1199.)  An employer has a duty to authorize and permit rest breaks.  (*Brinker*, *supra*, 53 Cal.4th at pp. 1029-1031.)  An employer must authorize and permit the break or pay the employee one hour of pay at the employee's regular rate for each workday the rest break is not provided.  (Cal. Code Regs., tit. 8, § 11040, subd. 12.)

There does not appear to be an on-duty rest break exception as there is for meal breaks.  The California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), is empowered to enforce California's labor laws, including IWC wage orders.  (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14

17

Cal.4th 557, 561-562.) A DLSE opinion letter, dated February 22, 2002, states, "there must be a net 10 minutes of rest provided in each 'work period' and the rest period must be, as the language [of Wage Order No. 4-2001] implies, duty-free."[2] (Dept. of Industrial Relations, DLSE, Acting Chief Counsel Anne Stevason, Opn. Letter No. 2002.02.22, Rest Period Requirements (Feb. 22, 2002) p. 1 <http://www.dir.ca.gov/dlse/opinions/2002-02-22.pdf> [as of May 10, 2013].)

Measured against these legal standards, the lawfulness of Boyd's lack of rest break policy and requirement that all security guard employees remain at their posts can be determined on a classwide basis. In *Bradley*, *supra*, 211 Cal.App.4th at pages 1150-1151, the court concluded the legality of an employer's lack of a meal and rest break policy could be resolved on a classwide basis. The court explained: "*Brinker* instructs that in ruling on the predominance issue in a certification motion, the court must focus on the plaintiff's theory of recovery and assess the nature of the legal and factual disputes likely to be presented and determine whether individual or common issues predominate. [Citation.] Here, plaintiffs' theory of recovery is based on [the employer]'s (uniform) *lack* of a rest and meal break policy and its (uniform) *failure* to authorize employees to take statutorily required rest and meal breaks. The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof. Although an employer could potentially defend these claims by arguing that it did have an informal or unwritten meal or rest break policy, this defense is also a matter of common proof." (*Id.* at p. 1150.) We find this reasoning to be persuasive.

In opposition to the motion for class certification, Boyd submitted declarations from current employees. Some declarations stated the employee was relieved of duties in order to take off-duty rest breaks; other declarations stated breaks

---

[2] The DLSE's opinion letters, though not controlling on the courts, are considered to be a source of guidance for interpreting IWC wage orders. (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11.)

were taken during periods of inactivity; at least one declaration stated the employee determined, based on the circumstances, when to take a rest break; and another declaration stated the employee frequently took rest breaks at her post. While, in *Faulkinbury I*, we concluded this evidence established individual issues of liability, we are now convinced, in light of *Brinker*, this evidence at most establishes individual issues of damages, which would not preclude class certification. Boyd's liability, if any, would arise upon a finding that its uniform rest break policy, or lack of policy, was unlawful.

C. *The Overtime Class*

As to the Overtime Class, we conclude the trial court erred to the extent it decided common issues did not predominate.[3]

Boyd paid its employees an allowance for the cost of cleaning and maintaining work uniforms and for the cost of gasoline. Plaintiffs asserted Boyd had a practice of excluding those allowances in calculating overtime wages. In addition, Plaintiffs asserted an annual bonus paid by Boyd to employees who had been employed for 12 consecutive months was nondiscretionary and, therefore, Boyd's policy of excluding the bonus from the calculation of overtime wages was unlawful.

In support of the motion for class certification, Plaintiffs presented evidence that Boyd had a uniform policy of paying security guard employees an allowance for maintenance of work uniforms and of reimbursing the cost of gasoline. The nature of, purpose of, entitlement to, and rate of reimbursement for both the work

---

[3]  The order denying the motion for class certification did not distinguish between the three theories of recovery asserted by Plaintiffs. The trial court offered no particular reason for denying certification of the Overtime Class other than the general reference to lack of ascertainability and commonality. In its respondent's brief, Boyd argued only the merits of the Overtime Class claims and asserted, "[i]n over four years of litigation, [Plaintiffs] have never cited a case that supports their theory that expense reimbursement should be treated as wages."

19

uniform maintenance and gasoline reimbursements are the same for every Boyd security guard employee.

Thus, whether the work uniform maintenance allowance and gasoline reimbursement must be included in calculating the overtime rate of pay can be decided on a classwide basis as a legal matter based on common proof. (See *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 338.) Eligibility for recovery and damages, if any, would have to be shown on an individual basis, but that would not preclude class certification. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334.)

Plaintiffs also presented evidence that Boyd had uniform, companywide policies for determining entitlement to an annual bonus. The Boyd employee handbook in effect between January 2001 and March 2006 provided that "[y]early bonuses shall be granted on the basis of the employee's length of employment. This period must be continuous from the last date of hire. Bonus pay shall be the straight time rate of pay at the time the bonus is given. [¶] A full-time employee, having completed one year of continuous service, shall receive a bonus equal to the average hours worked per week, not to exceed forty (40) hours." Boyd's employee handbook adopted in March 2006 provided: "Attendance Bonus: Hourly employees who maintain excellent attendance by reporting for duty at their assigned post on a daily basis will be rewarded with an Attendance Bonus. . . . The amount of the bonus will be determined by the following criteria: A full-time employee having completed one full year of continuous employment and having two (2) or less excused absences during a 12 month period beginning with the hire date will receive an amount equal to the average hours worked per week, not to exceed 40 hours, times their base rate of pay at the time of the payment."

In his declaration, Daniel Boyd explained: "Boyd has a general policy that employees who remain with the company for one year receive an annual attendance bonus. Prior to 2006, Boyd's employee handbook did not set forth any other requirements for receiving that bonus. However, the Branch Managers in each of Boyd's

20

branches have always had the authority and discretion to, and did, utilize factors such as a poor record of attendance in deciding on the amount of the bonus. . . . [¶] . . . Given this historic practice, Boyd included within its thorough revisions in 2006 to the 2001 employee handbook the additional guidelines concerning the annual attendance bonus. This was done to better apprise employees of the eligibility issues that were part of the bonus program."[4]

The legality of Boyd's policy of excluding the bonus from calculating overtime wages can be determined on a class-wide basis. The DLSE, in an opinion letter dated March 6, 1991, stated: "Bonus payments, with certain exceptions[,] are included in the calculation of overtime. Bonuses based on incentive must be calculated into the employee's wages to determine the 'regular rate of pay[.']" (Dept. of Industrial Relations, DLSE, Chief Counsel H. Thomas Cadell, Jr., Opn. Letter No. 1991.03.06, Calculation of Regular Rate of Pay (Mar. 6, 1991) p. 1, fn. omitted <http:// www.dir.ca.gov/dlse/opinions/1991-03-06.pdf> [as of May 10, 2013].) The DLSE identified an exception to that rule: "Bonus payments which are discretionary or payments in the nature of gifts on special occasions, and contributions by the employer to certain welfare plans and payments made by the employer pursuant to a profit-sharing, thrift and savings plan . . . are not to be considered as part of the 'regular rate of pay' for purposes of determining overtime compensation." (*Id.* at p. 1, fn. 1.) Because the criteria for awarding bonuses are uniform and applied consistently to all Boyd security guard employees, the issue whether those bonuses "are discretionary or payments in the nature of gifts on special occasions" (*ibid.*) can be determined on a classwide basis.

---

[4] Boyd also declared, "[t]he conditions contained in the handbook are not exhaustive and Branch Managers are still free to consider additional circumstances when deciding on the amount of the bonus." Whether and to what extent the bonus is discretionary is not an issue affecting class certification because the degree of discretion that Boyd accords its branch managers is a factor in determining on a classwide basis whether the bonus must be included in calculating overtime rate of pay.

### III.

### Ascertainability

We conclude the requirement of ascertainability has been met for all three subclasses. The purpose of the ascertainability requirement is to ensure notice is given to putative class members as to whom a judgment in the class action would be res judicata. (*Bufil*, *supra*, 162 Cal.App.4th at p. 1206.) Class members are ascertainable when they may be readily identified without unreasonable expense or time by reference to official records. (*Ibid.*) "In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members." (*Id.* at p. 1207.)

The Meal Break Class and the Rest Break Class may be ascertained from Boyd's employment records. Since Plaintiffs alleged Boyd had uniform policies that it applied to all security guard employees, the putative classes consist of all Boyd security guard employees during the class period.

The trial court found the Meal Break Class and the Rest Break Class were not ascertainable "for the reasons stated by defendant." Boyd had argued those classes were not ascertainable because membership depended on individual questions whether the nature of the work at each post prevented an employee from being relieved of all duty in order to take a meal or rest break. As we have explained, those questions do not prevent certification of the classes.

The Overtime Class can be readily identified without unreasonable expense or time by reference to Boyd's payroll records. Employee paycheck stubs submitted in support of the motion for class certification have separate entries for gasoline reimbursement and work uniform cleaning reimbursement. Boyd's payroll records also show the amounts paid for gasoline reimbursements and work uniform maintenance allowance.

22

As to annual bonuses, Plaintiffs are not asserting Boyd wrongly denied any employee an annual bonus. The issue is whether, as to those employees who received a bonus, the bonus must be included in calculating overtime wages. Those employees who received an annual bonus, and the amount of the bonus, may be determined readily from Boyd's payroll records. Accordingly, the Overtime Class is ascertainable.

## DISPOSITION

The order denying class certification is reversed and the matter is remanded with directions to grant the motion for class certification and to certify the Meal Break Class, the Rest Break Class, and the Overtime Class. Appellants shall recover costs incurred on appeal.

FYBEL, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

MOORE, J.

23