Filed 10/28/13; pub. and mod. order 11/26/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KWESI JONES et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>    Defendant and Respondent. | B237765<br><br>(Los Angeles County<br>Super. Ct. No. BC412413) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Reversed with directions.

Thierman Law Firm, Mark R. Thierman, Jason J. Kuller; Eric M. Epstein; United Employees Law Group and Walter Haines for Plaintiffs and Appellants.

Seyfarth Shaw, Candice T. Zee, George Preonas, Andrew Paley and Eric Steinert for Defendant and Respondent.

Kwesi Jones, on behalf of himself and others similarly situated (collectively Plaintiffs), filed a class action complaint against Farmers Insurance Exchange (Farmers) alleging wage and hour violations. Plaintiffs appeal the denial of their motion for class certification and the striking of their amended class certification motion. They contend the trial court erred in concluding that common issues of law or fact do not predominate over individual issues, that class certification would not provide substantial benefits to litigants and the courts, and that Jones cannot adequately represent the class.

We conclude that common issues do predominate and class certification would provide substantial benefits to litigants and the courts. We also conclude that substantial evidence supports the trial court's finding that Jones cannot adequately represent the class, and Plaintiffs have shown no prejudicial error in the striking of their amended class certification motion. We therefore will reverse the order denying the class certification motion and remand with directions to (1) allow Plaintiffs leave to file an amended complaint naming a suitable class representative, and (2) grant the motion for class certification if the court approves a class representative. We also will affirm the order striking Plaintiffs' amended class certification motion.

### FACTUAL AND PROCECURAL BACKGROUND

1. *Factual Background*

Farmers employs claims representatives to adjust insurance claims for physical damage to automobiles. "Auto Physical Damage" (APD) claims representatives spend most of their time in the field inspecting damaged vehicles at auto body shops or other locations, meeting with claimants, negotiating the settlement of claims, and accessing

2

and entering information onto Farmers's database using laptop computers.  They obtain

their assignments using a computer program known as ServicePower, which they access

using laptop computers.  Claims representatives travel to their first assignment of the

day from their homes rather than from an office, and their travel time to their first

assignment is uncompensated unless it exceeds their normal travel time.

Farmers issued a personalized memorandum with the subject line "Work Profile"

to each APD claims representative shortly after the ServicePower program was first

implemented in 2008.  The memorandum stated the normal work hours for each claims

representative and stated that each claims representative was required to be present at

the location of his or her first assignment at the beginning of the workday.  It stated that

driving time from the employee's home to the first assignment of the day and from the

last assignment of the day back home was not compensable unless the time exceeded

the employee's normal commute time or the employee, with the approval of

a supervisor, was performing compensable administrative work at home.

The "Work Profile" memorandum also stated that claims representatives might

be required to perform work tasks at home for which they would not be compensated.  It

described compensable and noncompensable work tasks as follows:

"1.) Computer sync time which ordinarily takes minimal time to perform and is

not compensable.  For example, taking a few minutes to sync your computer, obtaining

assignments/driving directions before getting in your car and driving to your first

appointment.  Your work day does not begin until you arrive at your first assignment,

unless your commute was longer than their normal commute.

"2.) Administrative, which is defined as 'principle' work and is compensable. For example, you take 30 minutes to perform required administrative duties, with supervisor approval before getting in your car and driving to your first assignment. Because the administrative work is considered principle work you will be compensated for this time, plus all drive time to your first assignment. The same would be true for the drive home if administrative work needs to be completed at home to end the day."

Jones worked for Farmers as a claims representative from March 2006 until September 2008, when Farmers discharged him for an alleged pattern of reporting that he was working in the field when he was actually at home. Jones filed a complaint against Farmers regarding his discharge. That action has been settled and dismissed.

2.     *Trial Court Proceedings*

Plaintiffs filed their complaint against Farmers in the present action in April 2009 and filed a first amended complaint in May 2010 alleging that Farmers failed to compensate its APD claims representatives for work performed before the beginning of their scheduled shifts. Plaintiffs allege that such unpaid work includes starting up their computer each day, accessing the ServicePower program, obtaining their first assignment, downloading property damage estimate forms, contacting auto body shops to confirm the location of damaged vehicles, contacting the insured, and driving to the auto body shop or other location of their first assignment.

Plaintiffs allege counts for (1) unpaid overtime; (2) failure to provide itemized wage statements; (3) failure to pay minimum wages; (4) civil penalties under Labor Code section 2699; and (5) unfair competition. They seek damages, statutory penalties

and restitution.  Each count is alleged both by Jones individually and on behalf of a class of current or former Farmers employees who are not exempt from California's overtime laws and who worked as APD claims representative and used the ServicePower program to obtain their work assignments.

Plaintiffs filed a motion for class certification in March 2011 seeking to certify the same class described in the complaint.[1]  The motion was supported by the declarations of 51 putative class members.  The declarants stated, generally, that they were required to perform various tasks in the morning before arriving at the location of their first assignment, as alleged in the complaint, but were not compensated for the time spent performing those tasks.  They stated that their work shifts generally began upon their arrival at the location of their first assignment or at 8:00 a.m. and that they spent, on average, 4.28 hours per week performing unpaid work before the beginning of

---

[1]     Plaintiffs sought certification of two classes defined as follows:
"A.  Class 'A' is defined as all current or former non-exempt employees employed by Defendant as APD Claims Representatives, Senior APD Claims Representatives, and Special APD Claims Representatives, in the State of California, within the four years preceding the filing of the original Complaint to the date entry of judgment, who used a package of computer software called ServicePower to obtain their assignments for the day.  [¶]  B.  Class 'B' is defined as all current or former non-exempt employees employed by Defendant as APD Claims Representatives, Senior APD Claims Representatives, Special APD Claims Representatives, in the State of California, within the four years preceding the filing of the original Complaint to the date of entry of judgment, who used a package of computer software called ServicePower to obtain their assignments for the day, and who were not furnished either as a detachable part of the check, draft or voucher paying the employee's wages, or by separate document, an accurate itemized statement showing the total hours worked by each employee and/or furnished with all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee in violation of California Labor Code § 226."

5

their shifts.  Plaintiffs argued that Farmers had a company-wide policy of requiring APD claims representatives to work at home without compensation and that the "Work Profile" memorandum was evidence of this policy.

Farmers filed an ex parte application to continue the hearing on the motion to August 19, 2011.  The trial court granted the application on March 30, 2011, continuing the hearing to August 19, 2011.  Plaintiffs filed an amended class certification motion in May 2011 seeking to modify the class definition to include all of the previously described employees who used either ServicePower or the Pathways program to obtain their work assignments.  The court continued the hearing on the class certification motion to October 28, 2011.

Farmers opposed the class certification motion arguing that it had no uniform policy requiring unpaid preshift work and, absent such a policy, individual issues predominated and class treatment was inappropriate.  Farmers argued that its claims representatives were not required to work off-the-clock and were prohibited from doing so, and argued that the "Work Profile" memorandum did not show otherwise.  It also argued that Jones was not an adequate class representative and that his claims were not typical of those of the class.

Farmers filed declarations by 11 current or former APD field claims supervisors or managers, five claims representatives, and the director of the Los Angeles claims service division.  The declarations stated, generally, that claims representatives regularly received their first assignment of the day on the afternoon of the previous workday and made initial contact with the claimant at that time.  They stated that if the

claims representatives needed additional time to prepare for an early morning appointment, they requested and regularly received approval to work overtime and that they were prohibited from working outside of their scheduled shifts without prior authorization.

Farmers filed a motion in September 2011 to strike Plaintiffs' amended motion for class certification. It argued that the amended motion was an attempt to amend the complaint to expand the class definition without filing a motion for leave to amend the complaint. It argued that the motion therefore was procedurally improper and should be stricken under Code of Civil Procedure section 436, subdivision (a) as "irrelevant, false, or improper" (*ibid.*) matter. Farmers also argued that its employees did not obtain assignments through the Pathways program and that Farmers would be prejudiced by an expansion of the class definition after two years of litigation. Plaintiffs opposed the motion to strike.

The trial court heard the class certification motion and the motion to strike on October 28, 2011. In a minute order filed on November 3, 2011, the court concluded that the class was sufficiently numerous and ascertainable and that Jones's claims were typical of those of the class. The court found, however, that Jones was not an adequate class representative because (1) he failed to file a declaration in support of the motion and therefore failed to show that he understood his fiduciary obligation owed to the class, and (2) "he was terminated for manipulating Service Power to indicate that he was working when, in fact he was not," showing a "lack of credibility."

7

The trial court also found that common issues did not predominate. It stated that the parties disputed what tasks were required to be performed before the beginning of the shift, that Farmers's evidence showed that it did not always deny requests for overtime to complete some tasks and that plaintiffs therefore had "not demonstrated that defendant has a classwide policy of refusing to pay overtime." The court stated, "Whether a particular class member would be approved for overtime to complete first contact tasks creates individualized questions that must be addressed before it can be determined that defendant did not compensate the class member for off-the-clock work."

The trial court stated further that whether the putative class members had time to complete the required tasks before the first appointment of the day also involved individualized inquiries and numerous variables including, "1) when a particular assignment was posted to Service Power; 2) how busy the class member was on the day the assignment was posted; 3) whether the amount of time spent on first assignment tasks was de minimus; 4) whether the class member requested overtime to perform first contact tasks; 5) the first appointment time assigned to a class member as compared to the start of their shift; and 6) commute time." It stated that these individualized inquiries compelled the conclusion that common questions did not predominate. The court also stated that the lack of commonality meant that a class action was not a superior method for resolving the dispute.

The trial court stated with respect to the motion to strike the amended motion for class certification that Code of Civil Procedure section 436 was inapplicable because the

8

motion was not a pleading. The court concluded, however, that there was no legal basis for the proposed amendment because the addition of employees who used the Pathways program was outside the scope of the pleadings. The court therefore granted the motion to strike.

Plaintiffs timely appealed the order denying the motion for class certification and the striking of their amended class certification motion.[2]

## CONTENTIONS

Plaintiffs contend (1) common issues of law and fact predominate, primarily with respect to the existence of a uniform policy denying compensation for legally compensable work performed prior to the beginning of the shift; (2) a class action is a superior means to conduct this litigation; (3) Jones is an adequate class representative; and (4) the striking of their amended class certification motion was error.

## DISCUSSION

### 1. Class Certification Requirements

A party moving for class certification must show "(1) [] a sufficiently numerous, ascertainable class, (2) [] a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact;

---

[2] An order effectively terminating class claims while allowing individual claims to proceed is appealable under the "death knell" doctrine. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757-759.)

9

(2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*).)

"The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.] A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).) The focus in a certification dispute is on whether common or individual questions are likely to arise in the action, rather than on the merits of the case. (*Id.* at p. 327.)

The California Supreme Court in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*) stated: "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding

10

would be both desirable and feasible. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]"[3] (*Id.* at pp. 1021-1022, fn. omitted.)

*Sav-On*, *supra*, 34 Cal.4th at pages 334-335, similarly stated: "We long ago recognized 'that each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action.' [Citation.] Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.] Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. [Citations.] [¶] Nor is it a bar to certification that individual class members may ultimately need to itemize their damages. We have recognized that the need for individualized proof of damages is not per se an obstacle to class treatment [citations]."

2. *Standard of Review*

We review an order granting or denying class certification for abuse of discretion. (*Sav-On*, *supra*, 34 Cal.4th at pp. 326-327.) A trial court is afforded great

---

[3] Some prior opinions had suggested that individual damage issues could be so numerous and substantial compared to the common issues of law or fact as to compel the conclusion in a particular case that common issues did not predominate. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459; *Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 732; *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 396.) *Brinker*, *supra*, 53 Cal.4th 1004, does not necessarily preclude this view in every case, but states the "general rule" that individual proof of damages does not preclude predominance.

11

discretion in ruling on class certification. Such a ruling generally will not be disturbed on appeal unless it is (1) not supported by substantial evidence, (2) based on improper criteria, or (3) based on erroneous legal assumptions. (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.)

"Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436.) In other words, we must reverse an order on class certification if the trial court engaged in an incorrect legal analysis, even though there may be substantial evidence to support the order. (*Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1224.)

"Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must 'presum[e] in favor of the . . . order . . . the existence of every fact the trial court could reasonably deduce from the record . . . . [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

3.    *Common Issues Predominate*

Plaintiffs' theory of recovery is that Farmers applied a uniform policy to all putative class members denying them compensation for work performed at home before the beginning of their scheduled shifts. The existence of such a policy is a factual

question that is common to all class members and is amenable to class treatment. Whether such a policy, if it exists, deprives employees of compensation for work for which they are entitled to compensation is a legal question that is common to all class members and is amenable to class treatment. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment. [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)

Farmers argued in opposition to the class certification motion that it had no uniform policy denying compensation for preshift work and that individual issues predominated in determining whether APD claims representatives performed compensable off- the-clock work for which they were uncompensated. It argued that such individual issues included determining what tasks each employee performed before the beginning of his or her shift, whether such activities were de minimis and whether the employee's supervisor was aware of any off- the- clock work. It filed declarations by APD claims representatives and others stating generally that they were not required to perform unpaid preshift work, that they requested and received approval to work overtime if necessary, and that the time required to start up their computers in the morning and access the ServicePower program was minimal.

Farmers's evidence concerns the existence of a uniform policy denying compensation for preshift work, which is a common question amenable to class treatment, as we have stated. Its evidence also goes to individual issues concerning the right to recover damages, which do not preclude class certification. (*Sav-On*, *supra*,

13

34 Cal.4th at p. 334; *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 235, 237; *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1301-1307 (*Jaimez*); *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1536.)

The trial court stated that the parties disputed what tasks were required to be performed before the beginning of a shift and that Plaintiffs had failed to demonstrate the existence of a uniform policy denying compensation for preshift work. It stated that whether a particular class member would have been approved for overtime if he or she had requested it and whether a class member had time to complete the required tasks after beginning of a shift and before his or her first appointment of the day were individual issues. The court also enumerated several other individual issues, including, "1) when a particular assignment was posted to Service Power; 2) how busy the class member was on the day the assignment was posted; 3) whether the amount of time spent on first assignment tasks was de minimus; 4) whether the class member requested overtime to perform first contact tasks; 5) the first appointment time assigned to a class member as compared to the start of their shift; and 6) commute time."

We conclude that the trial court applied improper criteria by focusing on individual issues concerning the right to recover damages rather than evaluating whether the theory of recovery is amenable to class treatment. (*Jaimez, supra*, 181 Cal.App.4th at p. 1299 ["The trial court misapplied the criteria, focusing on the potential conflicting issues of fact or law on an individual basis, rather than evaluating 'whether the *theory of recovery* advanced by the plaintiff is likely to prove amenable to class treatment' "].) We also conclude that substantial evidence does not support the

14

court's finding that common issues do not predominate.  (*Bluford v. Safeway, Inc.* (2013) 216 Cal.App.4th 864, 871 [held that in light of the plaintiff's theory of recovery based on uniform policies and procedures denying drivers compensation for rest periods, the trial court's conclusion that common issues did not predominate was not supported by substantial evidence].)  Plaintiffs' theory of recovery based on the existence of a uniform policy denying compensation for preshift work presents predominantly common issues of fact and law.  Farmers's liability depends on the existence of such a uniform policy and its overall impact on its APD claims representatives, rather than individual damages determinations.  (*Jaimez*, *supra*, at p. 1300.)  Moreover, the trial court erred to the extent that its ruling was based on its evaluation of the merits of Plaintiffs' claim as to the existence of such a uniform policy. (*Ibid.*)

4.      *Class Certification Would Provide Substantial Benefits*

The trial court's conclusion that Plaintiffs failed to establish that a class action was a superior method of resolving the dispute was based on its conclusion that common issues of law or fact did not predominate.  In our view, the predominance of common issues in these circumstances compels the conclusion that class certification will provide substantial benefits to the litigants and the courts and that a class action is a superior method of resolving the dispute.

5.      *Substantial Evidence Supports the Finding that Plaintiffs Failed to Establish that Jones Is an Adequate Class Representative*

15

Plaintiffs seeking class certification have the burden of proving the adequacy of their representation by a member of the putative class. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.) A trial court may consider the totality of the evidence in determining whether the plaintiffs have presented evidence sufficient to establish the requirements for class certification. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154 (*Soderstedt*).)

" 'A class action is a representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties. [Citation.] The representative parties not only make the decision to bring the case in the first place, but even after class certification and notice, they are the ones responsible for trying the case, appearing in court, and working with class counsel on behalf of absent members.' " (*Soderstedt*, *supra*, 197 Cal.App.4th at p. 156.) The trial court in *Soderstedt* stated that the declarations filed by the putative class representatives failed to show either that they desired to represent the putative class or that they understood the obligations of serving as class representatives. (*Id.* at p. 155.) The Court of Appeal concluded that it was "reasonable for the trial court to construe appellants' declarations as falling short of establishing their willingness to act as fiduciaries for absent class members, to the extent that the declarations showed that appellants intended to do nothing beyond what any litigant would do in prosecuting an action on his or her own behalf." (*Id.* at p. 156.) *Soderstedt* therefore concluded that substantial evidence supported the finding that the named plaintiffs had failed to satisfy their burden to show that they were adequate class representatives. (*Ibid.*)

16

Plaintiffs filed a declaration by their counsel describing counsel's experience and qualifications to serve as class counsel. Plaintiffs' counsel also declared that Jones "has reviewed the operative Complaint, understands the basic theories of the case, and understands his role as class representative." Jones himself, however, filed no declaration. The trial court stated that plaintiffs' counsel could not file a declaration on Jones's behalf and concluded that Jones had failed to show an understanding of his fiduciary obligation owed to the class and therefore failed to prove that he was an adequate class representative. We conclude that substantial evidence supports the court's finding that absent a declaration by Jones stating that he understands his fiduciary obligation to the class, Plaintiffs failed to show that Jones is willing and able to serve as an adequate class representative and therefore failed to prove that he is an adequate class representative. (*Soderstedt*, *supra*, 197 Cal.App.4th at p. 156.) In light of our conclusion, we need not decide whether Jones's alleged lack of credibility also supports the trial court's finding.

We reject Plaintiffs' argument that the trial court applied improper legal criteria by imposing a declaration requirement without any legal basis. In our view, the court simply examined the evidence presented and found that Plaintiffs had failed to prove that Jones was an adequate class representative. Plaintiffs have not shown that the court applied improper legal criteria or that the order is based on an erroneous legal assumption.

The lack of an adequate class representative, however, does not justify the denial of the class certification motion. Instead, the trial court must allow Plaintiffs an

17

opportunity to amend their complaint to name a suitable class representative (*La Sala v. American Sav. & Loan Assn.*[4] (1971) 5 Cal.3d 864, 872.) The court should then grant the class certification motion if it approves a class representative (*Jaimez, supra*, 181 Cal.App.4th at p. 1309).

> 6.  *Plaintiffs Have Shown No Prejudicial Error in the Striking of Their Amended Class Certification Motion*

Plaintiffs challenge the striking of their amended class certification motion. They argue that Code of Civil Procedure section 435 only provides for a motion to strike a "pleading," and the amended class certification motion was not a pleading. They also argue that the motion to strike was not filed "within the time allowed to respond to a pleading" (*id.*, subd. (b)(1)), as required, and that the motion improperly was based on extrinsic evidence. The trial court stated that Code of Civil Procedure section 435 was inapplicable because the amended class certification motion was not a pleading, but granted the motion to strike in any event because it concluded that the class for which Plaintiffs were seeking certification was beyond the scope of the pleadings.

An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) An error is prejudicial and results in a miscarriage of justice only if the reviewing court concludes, based on its review of the

---

[4]   The trial court's finding that plaintiffs failed to establish that Jones is an adequate class representative does not preclude the submission of additional evidence, including a declaration by Jones, in an effort to establish such adequacy.

entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Plaintiffs do not argue and have not shown that they were entitled to certification of a class broader than that alleged in their operative complaint.  They therefore have not shown that their amended class certification motion should have been granted and have shown no prejudice resulting from the striking of their amended motion and no prejudicial error.

## *DISPOSITION*

The order denying the class certification motion and striking the amended class certification motion is reversed as to the denial of class certification with directions to (1) allow Plaintiffs an opportunity to amend their complaint to name a new class representative, and (2) grant the class certification motion if the trial court approves a class representative. The order is otherwise affirmed. Plaintiffs are entitled to recover their costs on appeal.

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

20

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KWESI JONES et al., | B237765 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC412413) |
| v. | |
| FARMERS INSURANCE EXCHANGE, | ORDER |
| Defendant and Respondent. | (1) MODIFYING OPINION; (2) DENYING PETITION FOR REHEARING (3) CERTIFYING OPINION FOR PUBLICATION |

BY THE COURT:

It is ordered that the opinion filed in the above-entitled matter on October 28, 2013, be modified as follows:

1.　　On page 9, line 8, insert a new footnote 3 after "beginning of the shift;" with the footnote stating:

Plaintiffs challenge the denial of class certification only as to their claim for compensation for "computer sync time" work and expressly abandon any challenge to the denial of class certification on other claims. Plaintiffs argued in support of their petition for rehearing, " . . . the Court needs to focus on so-called 'computer sync time' and ignore the 'administrative' category. On the face of the Work Memo, Farmers pays

for preliminary 'administrative' duties so long as it is principle work approved by a supervisor. The 'administrative' category is thus irrelevant for purposes of certification and this appeal."

2. On page 12, line 18, section 3, entitled Common Issues Predominate, delete the entire sentence beginning on line 1 of said section 3, and replace with the following:

Plaintiffs' theory of recovery is that Farmers applied a uniform policy to all putative class members denying them compensation for "computer sync time" work performed at home before the beginning of their scheduled shifts.

3. On page 20, under Disposition, line 1, delete the entire Disposition and replace with the following:

The order denying the class certification motion and striking the amended class certification motion is reversed as to the denial of class certification with directions to (1) allow Plaintiffs an opportunity to amend their complaint to name a new class representative, and (2) grant the class certification motion as to Plaintiffs' claim for compensation for "computer sync time" work if the trial court approves a class representative. The order is otherwise affirmed. Plaintiffs are entitled to recover their costs on appeal.

The petition for rehearing filed by Farmers Insurance Exchange on November 14, 2013, is denied.

When the court's opinion in this matter was originally filed, it was not certified for publication. It now appears that there is good cause for the publication in the Official Reports of the opinion, as modified herein, and it is so ordered.

[There is no change in the judgment.]

2