Filed 5/2/14  Hall v. Rite Aid Corp. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KRISTIN HALL, | D062909 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00087938-CU-OE-CTL) |
| RITE AID CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Reversed.

Dostart Clapp & Coveney, James F. Clapp, James T. Hannink; Altshuler Berzon and Michael Rubin for Plaintiff and Appellant.

AARP Foundation Litigation and Barbara A. Jones for AARP as Amicus Curiae on behalf of Plaintiff and Appellant.

Paul Hastings, Jeffrey D. Wohl, Rishi N. Sharma, Regan A. W. Herald, Elizabeth J. MacGregor and Peter A. Cooper for Defendant and Respondent.

Kristin Hall filed this action, on behalf of herself and similarly situated persons, alleging defendant Rite Aid Corporation did not provide seats to employees while the employees were operating cash registers at Rite Aid check-out counters in violation of section 14 of Wage Order 7-2001 (section 14) (Cal. Code Regs., tit. 8, § 11070(14)), promulgated by California's Industrial Welfare Commission (IWC). Section 14 requires an employer to provide employees with suitable seats "when the nature of the work reasonably permits the use of seats." (Cal. Code Regs., tit. 8, § 11070(14)(A).)

The trial court initially granted Hall's motion for class certification. However, Rite Aid subsequently moved for decertification, citing additional evidence as well as decisions by other courts. The trial court granted Rite Aid's motion for decertification, and denied Hall's cross-motion to permit the action to proceed as a representative nonclass action under Labor Code section 2698 et seq. Hall appeals, contending (1) Rite Aid's decertification motion should have been denied because it was unsupported by an adequate showing of "changed circumstances"; (2) the trial court applied the wrong analytical approach and standards when it reevaluated the propriety of permitting Hall's action to proceed as a class action; (3) the trial court's order decertifying the class was based on an erroneous interpretation of section 14; and (4) the court erred when it denied Hall's cross-motion to permit the action to proceed as a representative nonclass action under the California Labor Code Private Attorneys General Act of 2004 (PAGA), codified in Labor Code section 2698 et seq.

We conclude that, under the analytic framework promulgated by *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*), the trial court erred

2

when it decertified the class action because its decertification order was based on an assessment of the merits of Hall's theory rather than on whether the theory was amenable to class treatment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Complaint

Hall is a former employee of Rite Aid, where she worked as a Cashier/Clerk. She filed a putative class action against Rite Aid to recover penalties pursuant to Labor Code § 2699, subdivision (f). She alleged Rite Aid violated Labor Code section 1198, which makes it illegal to employ a person under conditions of labor prohibited by an applicable IWC Wage Order. She alleged Rite Aid violated a condition of labor because it did not provide its Cashier/Clerks with suitable seats, in violation of section 14 of Wage Order 7-2001, which provides:

> "(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> "(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties." (Cal. Code Regs., tit. 8, § 11070(14).)

B. The Class Certification Order

Hall moved for class certification. In support of the motion, she submitted evidence that (1) all Cashier/Clerks are covered by the same job description and have similar job duties, including check-out work; (2) on average, Cashier/Clerks spend a

3

majority of their hours working at the register; (3) most check-out work (which largely involves scanning and bagging merchandise, processing payments, and handing the bags and receipt to the customer) can be done while seated, but Rite Aid required its Cashier/Clerks to stand while performing check-out work; and (4) Rite Aid's standard counter configurations could accommodate a seat with minimal modifications.

Rite Aid opposed the motion, arguing that individual issues would predominate. Rite Aid asserted (1) its stores differed in size, sales volume, number of Cashier/Clerks, and sales counter configurations; (2) when Cashier/Clerks are not performing check-out counter work they are tasked with duties that varied among the stores; and (3) the percentage of time each Cashier/Clerk spent behind the check-out counter varied from 2 percent to 99 percent (with an average of about 42 percent) and the time spent on stockroom or floor duties was equally varied. Rite Aid's evidence also showed that, even when performing duties at the check-out counter, the distance Cashier/Clerks had to move away from the register (to retrieve controlled items such as tobacco and liquor) varied depending on the specific configuration of each store, and they often or very often performed tasks requiring them to lift, bend, twist, lean over, or move around while working at the check-out register. Because of the variety of tasks, 69 percent of surveyed Cashier/Clerks reported they spent at least half their time moving behind the counter, and 31 percent reported they spent at least 3/4 of their time moving behind the counter.

Hall, whose proffered theory of recovery was that the work performed by Cashier/Clerks when stationed at the check-out registers reasonably permits the use of seats and therefore the failure to provide seats violated section 14, asserted many of these

4

variations were irrelevant to her theory and therefore were not an obstacle to class certification. Hall argued the lack of uniformity in the sizes and configurations of the stores, or the variations in the amount of time Cashier/Clerks reported spending working at the check-out counter, had no relevance to whether the failure to provide seats violated section 14 because the nature of the check-out work itself reasonably permitted the use of a seat. In October 2011 the trial court granted the motion for class certification.

C. The Decertification Motion

Three weeks before trial, the parties discussed the proposed trial plan at the trial readiness conference. Hall's proposal, which appears to have contemplated presenting plaintiff's case in seven days with testimony from 10 Cashier/Clerks, along with her ergonomist and Rite Aid employees regarding general company policies and practices, was challenged by Rite Aid's counsel because of due process issues discussed in a recently published opinion.[1] Hall's counsel conceded that, if the court believed the present case fell under the rationale of *Duran*, it would take "months" to try the matter. The court ordered supplemental briefing on the trial plan and on the impact of *Duran*.

Hall argued *Duran* had no application, and the sole question--whether "the nature of the work of a Cashier/Clerk at the front-end cash register reasonably permits the use of

---

[1] The case, *Duran v. U.S. Bank Nat. Assn.* (2012) 203 Cal.App.4th 212 (*Duran*), held that a class action in a "wage and hour" case was improperly tried using a "sampling" from the class because the trial plan did not provide a statistically valid sample and it violated the defendant's due process rights to present evidence refuting the claims of individual class members. (*Ibid*.) However, the Supreme Court granted review in *Duran* shortly after the pretrial conference. (*Duran v. U.S. Bank Nat. Assn.* (May 16, 2012) No. S200923.)

5

a seat"--was amenable to representative proof. Rite Aid's supplemental brief argued Hall had not proposed a manageable trial plan because it did not ensure that statistically valid representative proof would be provided on myriad questions,[2] and it would deny Rite Aid its due process right to present evidence refuting claims of specific class members. Rite Aid argued that, considering the absence of a manageable trial plan, the court sua sponte should decertify the class.

The court stated it did not at that point have enough information for it sua sponte to order the class decertified, but agreed to hear a motion to decertify. Rite Aid's motion relied on declarations from 11 Cashier/Clerks who had "opted out" of the class, excerpts from depositions of Hall's class declarants, and recent decisions from federal district courts.[3] Rite Aid argued any violation of section 14 required a two-step inquiry: first, the

---

[2] For example, Rite Aid argued, the percentage of time actually spent at the check-out counter rather than on other duties was material for defining the nature of the work within the meaning of section 14, and the evidence showed those percentages varied widely among the class. Rite Aid also argued that, even for time spent at the check-out counter, the percentage of time actually spent doing tasks incompatible with sitting was material to whether the nature of the work reasonably permitted the use of seats within the meaning of section 14, and those percentages also varied widely among the class. Rite Aid also asserted that questions of remedy, and in particular whether the check-out counter configurations among its 600 stores could absorb changes required to install seating facilities, also would require individualized determinations.

[3] Rite Aid cited *Kilby v. CVS Pharmacy, Inc.* (S.D. Cal. Apr. 4, 2012, No. 09cv2051-MMA (KSC)) 2012 WL 1132854 (*Kilby*), in which the federal court denied class certification in a "suitable seat" case for cash-register operators, arguing the same rationale should be applied to this case. Rite Aid also cited *E.E.O.C. v. Eckerd Corp.* (N.D.Ga. July 02, 2012, No. 1:10–cv–2816–JEC) 2012 WL 2568225, which involved an action brought by the Equal Employment Opportunities Commission under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.) alleging Rite Aid violated the ADA by not permitting a Cashier/Clerk to sit. In the latter action, the court

court needed to decide what was the "nature of the work" of Cashier/Clerks, and second, whether that work "reasonably permits" the use of a seat. Rite Aid argued that, under section 14, the "nature of the work" inquiry requires examination of the job "as a whole," rather than whether some discrete subpart of the employee's duties was amenable to being performed while seated. Rite Aid argued the variations among class members as to their job as a whole, including the amount of time they spend at the check-out counter compared with other duties, the types of physical activity required even when stationed at the check-out counter, and the physical configurations among hundreds of Rite Aid stores, made class treatment improper because the "nature of the work" of any specific Cashier/Clerk required individualized inquiries for each class member, and whether that work would "reasonably permit" the use of a seat would also require individualized determinations based on the physical characteristics for each check-out counter.

Hall raised both procedural and substantive reasons to oppose decertification. She asserted a decertification motion must be based on new law or new facts and Rite Aid had not adequately shown either prerequisite. Hall also asserted that variations among Cashier/Clerks as to their job duties were irrelevant because class certification depends on the plaintiff's "theory of recovery," and her theory was that Rite Aid's policy requiring its Cashier/Clerks to stand while at the register violated section 14 because the nature of check-out work reasonably permits the use of seats regardless of the amount of time any

---

entered summary judgment in favor of Rite Aid because many of the essential job functions involved physical movement and therefore the sitting accommodation demanded by the EEOC was per se unreasonable because incompatible with the essential job functions for a Cashier/Clerk. (*E.E.O.C. v. Eckerd Corp., supra,* 2012 WL at pp. *5-10.)

7

particular Cashier/Clerk might spend on other duties. Hall also argued the court should not employ Rite Aid's statutory construction (i.e. that the "nature of the work" inquiry requires examination of the job "as a whole") to evaluate the decertification motion because that substantive construction was inconsistent with the statutory purpose of section 14, was based on flawed authority, and was inconsistent with rulings from other courts.[4]

The trial court granted the motion to decertify the class. The court concluded that "individualized issues predominate as to whether the 'nature of the work' of a cashier/clerk reasonably permits the use of a suitable seat," and explained it agreed with the analysis in *Kilby* that section 14's obligations could only be assessed by examining "the job . . . as a whole." The court also rejected Hall's argument that the lawsuit could proceed as a PAGA representative action. Hall timely appealed.

II

LEGAL PRINCIPLES GOVERNING CLASS CERTIFICATION

A. Class Action Principles as Construed by *Brinker*

Class actions provide an avenue pursuant to which the claims of many individuals can be resolved at the same time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method of obtaining redress for claims that would otherwise be too small to warrant individual litigation. (*Richmond v. Dart*

---

4    Hall cited *Garvey v. Kmart Corp.* (N.D.Cal., July 18, 2012, No. C 11–02575 WHA), 2012 WL 2945473 (*Garvey*) and *Echavez v. Abercrombie and Fitch Co., Inc.* (C.D.Cal., March 12, 2012, No. CV 11–9754 GAF (PJWx)) 2012 WL 2861348 to support her statutory construction.

*Industries, Inc.* (1981) 29 Cal.3d 462, 469.) "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker, supra,* 53 Cal.4th at p. 1021.) "In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089, quoting *Richmond,* at p. 470.)

The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439-440 (*Linder*).) "A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).) "On the issue whether common issues predominate in the litigation, a court must 'examine the plaintiff's theory of recovery' and 'assess the nature of the legal and factual disputes *likely to be presented*.' [Citation.] . . . In conducting this analysis, a 'court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. "As a general rule if the defendant's

9

liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." ' " (*Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1141-1142 (*Bradley*).)

Because the analytic framework announced by *Brinker* appears dispositive of the narrow question of whether the trial court erred when it granted Rite Aid's decertification motion, we examine *Brinker* and its progeny in detail. In *Brinker*, the trial court certified a class action for approximately 60,000 current and former nonexempt employees of defendant corporations for a complaint alleging the defendants violated state laws requiring meal and rest breaks for nonexempt hourly employees.[5] (*Brinker, supra*, 53 Cal.4th at pp. 1017-1019 & fn. 4.) On appeal, this court held the trial court erred in certifying each of the subclasses and granted writ relief to reverse class certification. The California Supreme Court subsequently vacated that decision by its grant of review "to resolve uncertainties in the handling of wage and hour class certification motions." (*Id.* at p. 1021.) The Supreme Court ultimately concluded the trial court properly certified the rest break subclass, remanded the question of certification of the meal break subclass for

---

5    The class definition included several subclasses, three of which were (1) a rest period subclass comprising "all 'Class Members who worked one or more work periods in excess of three and a half (3.5) hours without receiving a paid 10 minute break during which the Class Member was relieved of all duties' " during the subclass period; (2) a meal period subclass comprising "all 'Class Members who worked one or more work periods in excess of five (5) consecutive hours, without receiving a thirty (30) minute meal period during which the Class Member was relieved of all duties' " during the subclass period; and (3) an off-the-clock subclass comprising "all 'Class Members who worked "off-the-clock" or without pay' " during the subclass period. (*Brinker, supra,* 53 Cal.4th at p. 1019.)

10

reconsideration by the trial court, and concluded the trial court erred by certifying the off-the-clock subclass. (*Id*. at p. 1017.)

*Brinker's* significance lies in its statements on the extent to which a trial court may or must reach the merits of a plaintiff's claim when deciding whether to certify a class. (*Brinker, supra,* 53 Cal.4th at p. 1023.) *Brinker* stated a class certification motion "is not a license for a free-floating inquiry into the validity of the complaint's allegations" (*ibid.*) and that "[i]n many instances, whether class certification is appropriate or inappropriate may be determined irrespective of which party is correct." (*Ibid*.) Although *Brinker* recognized that "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them" (*id*. at pp. 1023-1024), it cautioned that "[s]uch inquiries are closely circumscribed" (*id*. at p. 1024), and "resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit [citation]." (*Id*. at p. 1023.) *Brinker*, summarizing the controlling approach, stated that "[p]resented with a class certification motion, *a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate*. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary." (*Id*. at p. 1025, italics added.)

11

*Brinker* ultimately concluded plaintiff's theory of liability as to the rest break subclass--the employer had a uniform policy that violated the mandated rest breaks under the statute as construed by *Brinker*--was properly certified for class treatment. *Brinker* explained class treatment was proper because there existed "a common, uniform rest break policy . . . equally applicable to all Brinker employees [and] [c]lasswide liability could be established through common proof if Hohnbaum were able to demonstrate that, for example, Brinker under this uniform policy refused to authorize and permit a second rest break for employees working shifts longer than six, but shorter than eight, hours. Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Brinker, supra,* 53 Cal.4th at p. 1033.)  Although electing to accede to the parties' request to reach the *merits* of the plaintiff's theory of liability (*id*. at p. 1026), *Brinker* unequivocally reiterated that:

> "contrary to the Court of Appeal's conclusion, the certifiability of a rest break subclass in this case *is not dependent upon resolution of threshold legal disputes over the scope of the employer's rest break duties*.  The theory of liability--that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law--is by its nature a common question eminently suited for class treatment.  As noted, we have at the parties' request addressed the merits of their threshold substantive disputes.  However, in the general case to prematurely resolve such disputes, conclude a uniform policy complies with the law, and thereafter reject class certification--as the Court of Appeal did-- places defendants in jeopardy of multiple class actions, with one after another dismissed until one trial court concludes there *is* some basis for liability and in that case approves class certification. [Citation.]  It is far better from a fairness perspective to determine class certification independent of threshold questions disposing of the merits, and thus permit defendants who prevail on those merits,

12

equally with those who lose on the merits, to obtain the preclusive benefits of such victories against an entire class and not just a named plaintiff." (*Id*. at pp. 1033-1034, italics added.)

B. *Brinker's* Progeny

Subsequent cases have concluded, considering *Brinker*, that when a court is considering the issue of class certification and is assessing whether common issues predominate over individual issues, the court must "focus on the policy itself" and address whether the plaintiff's *theory* as to the illegality of the policy can be resolved on a class-wide basis. (*Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 232 (*Faulkinbury*); accord, *Bradley, supra*, 211 Cal.App.4th at pp. 1141-1142 ["[o]n the issue whether common issues predominate in the litigation, a court must 'examine the plaintiff's theory of recovery' and 'assess the nature of the legal and factual disputes *likely to be presented*' "]; *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 726 (*Benton*) ["under *Brinker* . . . for purposes of certification, the proper inquiry is 'whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment' "].) Those courts have also agreed that, where the theory of liability asserts the employer's uniform policy violates California's labor laws, factual distinctions among whether or how employees were or were not adversely impacted by the allegedly illegal policy does not preclude certification. (See, e.g., *Bradley, supra*, at pp. 1150-1153 [where theory of liability was employer's uniform policy violated labor laws by not authorizing employees to take meal and rest breaks, class certification is proper and fact some employees in fact took meal and rest breaks is a damage question that " 'will rarely if ever stand as a bar to certification' "].)

13

Finally, those courts, although concluding the plaintiff's proffered theory of recovery (i.e. that the challenged uniform policy violated labor laws) mandated certification because common questions as to that theory predominated, also assiduously adhered to *Brinker's* admonition to defer any determination of the legal merits of a plaintiff's proffered theory at the class certification stage. For example, in *Faulkinbury, supra,* 216 Cal.App.4th 220, the plaintiff's theory of recovery was that the employer's policy of not providing off-duty meal breaks for its security guard employees violated the applicable wage order, and the court concluded, under *Brinker*, the focus must be on the policy itself and "whether the legality of the *policy* can be resolved on a classwide basis." (*Faulkinbury,* at p. 232.) After concluding the lawfulness of the employer's policy of requiring all security guard employees to sign the on-duty meal break agreement could be determined on a class-wide basis (*id.* at p. 233), *Faulkinbury* immediately stated that "[a]s *Brinker* instructs, we do not determine at this stage whether Boyd's policy of requiring on-duty meal breaks violates the law. Instead, the question we address is whether Boyd's legal liability under the theory advanced by Plaintiffs can be determined by facts common to all class members. . . . Under [the theory advanced by plaintiffs, employer's] legal liability can determined on a class basis." (*Id.* at p. 234.)

Similarly, in *Benton, supra,* 220 Cal.App.4th 701, the plaintiff's theory of legal liability was that the employer violated wage and hour requirements by *not adopting* a policy authorizing and permitting its technicians to take meal or rest break periods because (in plaintiffs' theory) an employer was obligated to implement procedures ensuring its employees received notice of their meal and rest period rights and were

14

permitted to exercise those rights. (*Id*. at pp. 724-725.) After concluding the plaintiff's theory (whether an employer's "failure to adopt a policy" violated applicable laws) could be determined on a class-wide basis, *Benton* turned to the defendants' claim that the trial court's order denying certification could be affirmed because "the applicable wage and hour provisions do not require employers to adopt a policy or implement procedures ensuring that nonexempt employees are notified of their meal and rest period rights and permitted to exercise those rights[,] [but instead] merely obligate an employer to provide a ' "reasonable opportunity" ' to take meal and rest breaks," and therefore individual issues would predominate because there was evidence showing many of the class members were provided such an opportunity. (*Id*. at pp. 726-727.) *Benton* rejected this argument in part because the employer's "assertion that it was not required to adopt the sort of meal and rest break policy envisioned by plaintiffs goes to the merits of the parties' dispute. The question of certification, however, is ' "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' [(Quoting *Sav-On, supra,* 34 Cal.4th at p. 326.)] Indeed, *Brinker* emphasized that, whenever possible, courts should 'determine class certification independent of threshold questions disposing of the merits.' " (*Benton,* at p. 727.)

Finally, in *Bradley, supra*, 211 Cal.App.4th 1129, the plaintiffs' theory of recovery was based in part on "[employer's] (uniform) *lack* of a rest and meal break policy and its (uniform) *failure* to authorize employees to take statutorily required rest and meal breaks." (*Id*. at p. 1150.) *Bradley* concluded that, after *Brinker*, class certification for these claims was appropriate. *Bradley* also explained why the employer's lengthy

15

argument on the merits (i.e. that the law did not require an employer to provide a *written* meal or rest break policy) did not alter the analysis of whether the plaintiffs' *theory* of liability was *amenable* to class treatment: "[First, the] plaintiffs' allegations concern the absence of any policy, not merely a written policy.  Moreover, as *Brinker* instructs, a court should not address the merits of a claim in examining a class certification motion unless necessary.  It is not necessary for this court to address the issue whether a written meal and/or rest break policy is legally required."  (*Bradley,* at p. 1154, fn. 9.)

C. Standard of Review

*Brinker* also summarized the principles for our standard of review: "On review of a class certification order, an appellate court's inquiry is narrowly circumscribed.  'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification."  [Citation.]  A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.  [Citations.]'  [(Quoting *Fireside Bank v. Superior Court*, *supra*, 40 Cal.4th at p. 1089, [citation].)]  Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence.  [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce

16

from the record . . . .'  [(Quoting *Sav-On, supra,* 34 Cal.4th at p. 329.)]"  (*Brinker, supra*, 53 Cal.4th at p. 1022.)

III

ANALYSIS OF DECERTIFICATION ORDER

The trial court's order decertifying the class action was based on its predicate determination that, for purposes of whether section 14 mandates provision of a suitable seat, it agreed with Rite Aid that the term "nature of the work" required it to examine whether the job *as a whole* reasonably permits the use of seats, and rejected the merits of Hall's theory of liability that Rite Aid's policy of requiring its Cashier/Clerks to stand while performing check-out work violated section 14's mandate because the nature of check-out work reasonably permits the use of seats, regardless of the amount of time any particular Cashier/Clerk might spend on other duties.[6]

Hall asserts the trial court first erred by reaching and resolving this predicate determination, and this error alone requires reversal of the decertification order.  Hall

---

[6]    As a preliminary matter, Hall argues the court was precluded from decertifying the class because there was no new law or facts warranting decertification.  However, an order granting class certification is "subject to modification at any time."  (*Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692 [order granting certification not appealable until after final judgment].)  Indeed, our Supreme Court has recognized that it may occur " 'that the trial court will determine in subsequent proceedings that some of the matters bearing on the right to recovery require separate proof by each class member.  If this should occur, the applicable rule . . . is that the maintenance of the suit as a class action is not precluded so long as the issues which may be jointly tried, when compared to those requiring separate adjudication, justify the maintenance of the suit as a class action.' [(Quoting *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 815.)]  And if unanticipated or unmanageable individual issues do arise, the trial court retains the option of decertification."  (*Sav-On, supra,* 34 Cal.4th at p. 335.)

17

asserts *Brinker*, as well as subsequent decisions applying *Brinker*, stand for the proposition that (1) the certification phase is limited to determining whether the plaintiff's *theory* of liability is amenable to class treatment and a court should not reach the *merits* of that theory, and (2) when (as here) the plaintiff's theory alleges the employer has a uniform policy that offends labor laws, such an action "by its nature [involves] a common question eminently suited for class treatment" (*Brinker, supra*, 53 Cal.4th at p. 1033) and any distinctions in the actual work experience of employees governed by such policy do not preclude certification.

Our review of *Brinker*, which is binding on this court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450), compels the conclusion the trial court erroneously based its decertification order on its assessment of the merits of Hall's claim rather than on the theory of liability advanced by Hall. We are instructed under *Brinker* that the starting point for purposes of class certification commences with Hall's theory of liability because, "for purposes of certification, the proper inquiry is 'whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment.' " (*Benton,, supra*, 220 Cal.App.4th at p. 726.) Here, as in *Brinker* and its progeny, Hall alleged (and Rite Aid did not dispute) that Rite Aid had a uniform policy of the type envisioned by *Brinker*: Rite Aid did not allow its Cashier/Clerks to sit (and therefore provided no suitable seats for its Cashier/Clerks) while they performed check-out functions at the register. Hall's theory of liability is that this uniform policy was unlawful because section 14 mandates the provision of suitable seats when the nature of the work reasonably permits the use of seats, and the nature of the work *involved in performing*

18

*check-out functions* does reasonably permit the use of seats.  Hall's proffered theory of liability is that, regardless of the amount of time any particular Cashier/Clerk might spend on duties other than check-out work, Rite Aid's uniform policy transgresses section 14 because suitable seats are not provided for that aspect of the employee's work that *can* be reasonably performed while seated.

It does not appear that any aspect central to Hall's *theory* of recovery (i.e. what is Rite Aid's policy, and whether the nature of the work involved in performing check-out functions would reasonably permit the use of seats) would not be amenable to common proof.  Indeed, the trial court's decertification order did not make a contrary determination (i.e., those inquiries would not be amenable to common proof), but was instead based on its conclusion that Hall's theory of liability was unmeritorious. Specifically, it concluded, contrary to Hall's postulated theory, that section 14 does not mandate the provision of suitable seats when the nature of a substantial *task* within an employee's range of duties would reasonably permit the use of seats, but instead mandates the provision of suitable seats *only* when the nature of an employee's *work as a whole* would reasonably permit the use of seats.  Based on that construction of section 14, the trial court concluded decertification was proper because individual issues as to each class member's "job as a whole" would predominate over common questions.  However, under *Brinker* as construed by *Bradley, Benton* and *Faulkinbury*, the trial court's decertification order was based on improper criteria and/or erroneous legal assumptions and must be reversed because it based its ruling on the merits of Hall's theory rather than on whether the theory itself would be amenable to common evidentiary proof.

19

Rite Aid's arguments on appeal largely ignore the analysis of *Bradley, Benton* and *Faulkinbury.* Instead, Rite Aid asserts the trial court properly reached the merits of (and correctly rejected) Hall's theory of liability when it ruled on the decertification motion because *Brinker* cannot be read to permit a plaintiff to "invent a class action by proposing an incorrect rule of law and arguing, 'If my rule is right, I win on a class basis.' " However, Rite Aid's argument appears to overlook the import of *Brinker's* statement that

> "the certifiability of a rest break subclass in this case *is not dependent upon resolution of threshold legal disputes over the scope of the employer's rest break duties*. The theory of liability--that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law--is by its nature a common question eminently suited for class treatment. . . . [*I*]*n the general case to prematurely resolve such disputes, conclude a uniform policy complies with the law, and thereafter reject class certification--as the Court of Appeal did--places defendants in jeopardy of multiple class actions*, with one after another dismissed until one trial court concludes there *is* some basis for liability and in that case approves class certification. [Citation.] *It is far better from a fairness perspective to determine class certification independent of threshold questions disposing of the merits, and thus permit defendants who prevail on those merits, equally with those who lose on the merits, to obtain the preclusive benefits of such victories against an entire class and not just a named plaintiff*." (*Brinker, supra,* 53 Cal.4th at pp. 1033-1034, italics added.)

We read *Brinker* to hold that, at the class certification stage, as long as the plaintiff's posited theory of liability is *amenable* to resolution on a class-wide basis, the court should certify the action for class treatment *even if* the plaintiff's theory is ultimately incorrect at its substantive level, because such an approach relieves the defendant of the jeopardy of serial class actions and, once the defendant demonstrates the posited theory is substantively flawed, the defendant "obtain[s] the preclusive benefits of

20

such victories against an entire class and not just a named plaintiff." (*Brinker, supra,* 53 Cal.4th at pp. 1034, 1033.) For these reasons, *Brinker* has concluded "[i]t is far better from a fairness perspective to determine class certification independent of threshold questions disposing of the merits, [because] defendants who prevail on those merits, equally with those who lose on the merits" (*id.* at p. 1034) have the benefits of their substantive legal victory applied to the class as a whole.

Rite Aid, seizing on *Brinker's* observation that "[*t*]*o the extent* the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them" (*Brinker, supra,* 53 Cal.4th at p. 1025, italics added), argues the court properly evaluated the merits of Hall's legal theory as a predicate to ruling on the decertification motion. However, *Brinker* repeatedly cautioned that "[s]uch inquiries are closely circumscribed" (*id.* at p. 1024) and ordinarily should not be addressed as part of the certification evaluation. (*Id.* at p. 1023 ["resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation] with the court assuming for purposes of the certification motion that any claims have merit"].) We interpret the highlighted language in the passage from *Brinker* cited by Rite Aid to mean, by negative implication, that to the extent *the propriety of certification* does not depend on determining threshold legal matters, such determinations should be deferred.[7] Here, the propriety of certification does not depend on whether Hall's

---

7    Rite Aid cites no relevant authority, other than the quoted passages from *Brinker*, holding that trial courts may resolve the merits of a plaintiff's claim as a predicate to the certification determination. Although Rite Aid cites *Marlo v. United Parcel Service, Inc.*

21

interpretation of section 14 is correct because, "assuming for purposes of the certification motion [Hall's] claims have merit," the certification question must focus on whether common questions relevant to proving Hall's theory would predominate over individual issues. Certainly, whether Rite Aid had a policy requiring Cashier/Clerks to stand while working at the register is subject to common proof. Moreover, the other factual question central to Hall's theory of recovery--whether the nature of the work involved *in performing check-out functions* would reasonably permit the use of seats--appears equally amenable to common proof. Thus, regardless of whether Hall's or Rite Aid's interpretation of section 14's mandate is correct, class certification for Hall's claim would be proper,[8] and resolution of disputes over the merits of Hall's theory of recovery must be deferred until after the class certification has been decided.

---

(C.D.Cal. 2008) 251 F.R.D. 476 as additional authority purporting to approve an examination and resolution of the merits of a plaintiff's claim as a predicate to the certification determination, *Marlo* does not stand for that proposition. To the contrary, it appears *Marlo's* concern when it considered decertification was whether class-wide treatment was feasible because it observed there would be an absence of commonality in the evidence necessary to prove the underlying claim (*id*. at pp. 480-481), and *Marlo* expressly cautioned that it was "*careful to distinguish this observation from the kind of merits-determination that is disfavored with respect to class certification decisions. When considering class certification, a court should not weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim.*" (*Id*. at p. 480, fn. 2, italics added.)

[8]     This question--whether common issues would predominate over individualized issues in deciding if the nature of the work involved in performing check-out functions would reasonably permit the use of seats--is of course vested in the first instance to the trial court's discretion, and we caution our observations should not be construed as deciding this question de novo or as holding that, as a matter of law, the common factual questions relevant to proving Hall's theory of liability necessarily predominate over individualized questions. However, because the trial court originally found in *favor* of certification, and its subsequent decertification order was premised on its conclusion that

We conclude that under *Brinker*, consistent with the decisions in *Bradley, Benton* and *Faulkinbury*, the trial court's decertification order was based on improper criteria and/or erroneous legal assumptions and must be reversed because it was based on the merits of Hall's theory rather than on whether the theory itself would be amenable to common treatment of the evidentiary or legal issues.

IV

THE REMAINING ISSUES

Because we conclude the trial court's decertification order must be reversed, we need not reach Hall's alternative claim that the action should have been permitted to proceed as a representative nonclass action under PAGA. However, we briefly address one other argument presented by Hall on appeal. Hall acknowledges that *Brinker* admonishes against deciding the merits of the plaintiff's theory of liability when such decision is unnecessary to the certification question, and also acknowledges such decision on the merits should be postponed until after the certification issue is determined and would be binding on the class. However, notwithstanding *Brinker's* admonitions, Hall argues we are required to decide the proper construction of section 14's mandate because the trial court resolved the merits and therefore "as in *Brinker*, [this court] must reach out to decide that ill-timed and incorrectly decided issue."

We decline Hall's invitation to reach the merits of the parties' competing constructions of section 14, for several reasons. First, we adhere to *Brinker's* instructions

Hall's theory of recovery was substantively flawed, we do not construe the trial court's decertification order as signaling an intention to reverse its original decision that class treatment of Hall's *theory* of recovery was appropriate.

23

that, unless necessary to the certification issue, a court should not decide the merits of the plaintiff's theory when evaluating the certification issue. As previously discussed, other post-*Brinker* decisions have followed that instruction and evaluated rulings on certification motions while declining to reach issues impacting the merits of the plaintiff's theory of liability. (*Faulkinbury, supra,* 216 Cal.App.4th at p. 234 ["[a]s *Brinker* instructs, we do not determine at this stage whether Boyd's policy of requiring on-duty meal breaks violates the law"]; *Benton, supra,* 220 Cal.App.4th at pp. 726-727 [rejecting defendant's claim the order denying certification could be affirmed because applicable wage and hour provisions are satisfied if employer provides "reasonable opportunity" to take meal and rest breaks because this "assertion that it was not required to adopt the sort of meal and rest break policy envisioned by plaintiffs goes to the merits of the parties' dispute"]; *Bradley, supra*, 211 Cal.App.4th at p. 1154, fn. 9 ["[A]s *Brinker* instructs, a court should not address the merits of a claim in examining a class certification motion unless necessary. It is not necessary for this court to address the issue whether a written meal and/or rest break policy is legally required."].) Indeed, Hall's argument appears to constitute an invitation to this court to travel the same path as it did in *Brinker*--of ruling on the merits of the plaintiff's theory when evaluating a trial court's ruling on a certification motion--which our Supreme Court in *Brinker* determined was error requiring reversal of the appellate court's opinion.

Although Hall argues her suggestion falls within the ambit of *Brinker's* approach, *Brinker* reached the merits only because it recognized there was " 'nothing to prevent a court from considering the legal sufficiency of claims when ruling on certification where

24

both sides jointly request such action.' [(Quoting *Linder, supra,* 23 Cal.4th at p. 443.)]" (*Brinker, supra*, 53 Cal.4th at p. 1026.) We have found no request from Rite Aid that, assuming we vacated the decertification order, we reach the merits of Hall's claim and resolve the merits of Hall's theory of recovery in a manner that would become binding on the class and on Rite Aid. Moreover, even assuming Rite Aid's brief on appeal could be construed to include an embedded request to resolve the merits of Hall's theory, it appears the power to reach the merits as part of the certification process is at most a discretionary power to be employed in exceptional cases. (Cf. *Linder,* at p. 443 ["we do not foreclose the possibility that, *in the exceptional case* where the defense has no other reasonable pretrial means to challenge the merits of a claim to be asserted by a proposed class, the trial court *may*, after giving the parties notice and an opportunity to brief the merits question, refuse class certification because the claim lacks merit as a matter of law"], italics added.)

Here, Rite Aid does have other "reasonable pretrial means to challenge the merits of [Hall's] claim," such as a motion for summary adjudication or for judgment on the pleadings (cf. *Linder, supra,* 23 Cal.4th at p. 440 ["[w]hen the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards"]), and we therefore believe it is more appropriate to adhere to the general rule against resolving issues unnecessary to the disposition of this appeal. (Cf. *Conte v.*

25

*Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 114 ["[a]s a general rule, we will not resolve an issue that is unnecessary to disposition of an appeal"].)  Moreover, it would be premature to resolve the merits of Hall's theory because, although we have reversed the present decertification order, we have done so because it was predicated on a premature assessment of the merits of Hall's claim rather than because the trial court was categorically precluded from decertifying the class for other and proper reasons.  (See fn. 8, *ante*.)  Rather than resolve a question that could be potentially mooted by subsequent rulings, we believe the prudent course is to remand the matter to the trial court for orderly resolution of the claims asserted by Hall.

### DISPOSITION

The trial court's order granting Rite Aid's Motion for Class Decertification entered October 29, 2012, is reversed, and the matter is remanded for further proceedings consistent with this opinion.  Hall shall recover costs on appeal.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

26